**NOT FOR PUBLICATION** (Docket Nos. 28, 34)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| STONEBRIDGE BANK, | : | |
| Plaintiff, | : | Civil No. 09-5145 (RBK/JS) |
| v. | : | **OPINION** |
| NITA PROPERTIES, LLC and WGMF, LLC, | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the Motion for Default Judgment filed by Plaintiff Stonebridge Bank ("Stonebridge"), (Doc. No. 28), and the Motion by Nita Properties, LLC ("NITA") to Set Aside Default and in Opposition to [the] Motion for Final Judgment for Insufficient Service of Process, (Doc. No. 34). Stonebridge alleges that Defendant Nita Properties, LLC ("NITA") failed to pay the balance on a loan for $1,805,000.00 at maturity. NITA argues that Stonebridge is not entitled to default judgment because Stonebridge failed to properly serve the summons and complaint under Federal Rule of Civil Procedure 4. For the reasons expressed below, Stonebridge's motion is GRANTED in part and DENIED in part, and NITA's motion is DENIED.

I.   BACKGROUND

Stonebridge is a Pennsylvania banking corporation with its principal place of business in West Chester, Pennsylvania. NITA is a limited liability corporation organized in the State of New Jersey. All members of NITA are real persons and citizens of New Jersey.

1

In January 2006, Stonebridge entered into a loan agreement with NITA (the "Loan Agreement").  Under the terms of the Loan Agreement, Stonebridge loaned NITA $1,805,000.00.  The loan was evidenced by a promissory note (the "Note") that was executed and delivered by NITA.  The Note was payable to the order of Stonebridge in the principal amount of $1,805,000.00.

As security for NITA's obligation to pay under the Note, NITA simultaneously executed a Mortgage and Security Agreement (the "First Mortgage").  Under the terms of the Note and the Loan Agreement, NITA was obligated to make monthly interest payments beginning on February 27, 2006 and continuing until the earlier of July 27, 2007 or the sale of the Mortgaged Property (the "Maturity Date"), when the entire Loan, including interest, principal, and all other sums were required to be paid in full.

The First Mortgage covered land, buildings, and other improvements located in Brigantine, New Jersey (the "Mortgage Property").  The First Mortgage was recorded on February 8, 2006 in Atlantic County, New Jersey, and re-recorded on April 19, 2006.  Thereafter, the First Mortgage was modified on several occasions.  First, on April 20, 2007, the First Mortgage was modified pursuant to a Mortgage Modification Agreement, and recorded in Atlantic County on May 10, 2007.  Second, on December 18, 2007, the First Mortgage was modified pursuant to another Mortgage Modification Agreement, and recorded on March 25, 2008.  Finally, on September 18, 2008, the First Mortgage was modified pursuant to a third Mortgage Modification Agreement, and recorded on October 8, 2008 in Atlantic County.

As additional security for NITA's obligations under the Note, on January 27, 2006, NITA executed an Absolute Assignment of Rents and Leases for the Mortgaged Property (the "Assignment of Leases").  The Assignment of Leases was recorded on February 8, 2006 in

Atlantic County and re-recorded on April 10, 2006.

On December 18, 2007, January 31, 2008, and September 18, 2008, NITA and Stonebridge amended the Loan Agreement; and on December 18, 2007 and September 18, 2008, NITA and Stonebridge made allonge amendments to the Note. As a result of those amendments, the Maturity Date was extended to April 27, 2009.

NITA also granted the following subordinate mortgages on the Mortgaged Property: (a) a mortgage granted to Stonebridge on December 18, 2007 (the "Second Mortgage") to secure an original principal balance of $80,000.00; (b) a mortgage granted to WGMF on June 26, 2009 to secure an original principal balance of $250,000; and (c) a mortgage to WGMF on June 26, 2009 to secure an original principal balance of $350,000.00. The subordinate mortgages were recorded on January 4, 2008, June 23, 2009, and July 2, 2009 respectively.

NITA failed to pay the entire amount due under the Loan on April 27, 2009.

As a result, Stonebridge sent NITA a notice of demand for payment of a matured obligation (the "Notice of Demand") on July 8, 2009. In the Notice of Demand, Stonebridge informed NITA that by failing to pay all sums due before the Maturity Date, NITA violated the terms of the Loan. In addition, Stonebridge demanded that NITA pay all sums due within a period of ten calendar days from the date of the Notice of Demand and informed NITA that Stonebridge intended to exercise its rights under the Loan without further notice. Moreover, Stonebridge advised NITA that interest would accrue at the Default Rate[1] beginning on July 9, 2009 and continue until Stonebridge received full payment. Subsequently, Stonebridge also provided NITA with a Notice of Default and Acceleration ("Notice of Acceleration"). The Notice of Acceleration advised NITA that the unpaid balance of principal and interest was

---

[1] Under the terms of the Note, the Default Rate is 5% per annum plus the interest rate payable under the Loan. (Cert. in Supp. Pl.'s Mot. for Default J. Ex. A., at 3).

immediately due and payable, and that interest would begin to accrue at the Default Rate.

NITA failed to pay all amounts due under the Loan within ten days of the Notice of Demand and the Notice of Acceleration.

According to Stonebridge, the following amounts are due by NITA under the Note and the First Mortgage as of August 26, 2009:

- Principal - $1,799,905.00
- Accrued Interest - $146,520.70
- Late Charges - $97,401.42

(Mot. for Default J., at 5). Stonebridge also claims that it is entitled to $31,224.49 in attorneys' fees and costs.

## II. DISCUSSION

### 1. Jurisdiction

"Before entering a default judgment against a party that has not filed responsive pleadings, 'the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" Bank of Am., N.A. v. Hewitt, No. 07-4536, 2008 U.S. Dist. LEXIS 90719, at *5 (D.N.J. Nov. 7, 2008) (quoting Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986)).

In this case, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the case involves citizens of different states and the amount in controversy exceeds $75,000.00. Stonebridge is a Pennsylvania banking corporation with its principal place of business in West Chester, Pennsylvania. NITA is a citizen of New Jersey. Therefore, the parties are diverse.

Moreover, the jurisdictional amount is satisfied. The Complaint alleges that the amount

in controversy exceeds $75,000.00.  The transaction giving rise to the Complaint was a loan issued by Stonebridge in the amount of $1,805,000.00, which was secured by a Mortgage and Security Agreement encumbering real property in New Jersey.  Thus, the amount in controversy requirement is satisfied.

The Court has personal jurisdiction over NITA because all members of NITA are real persons and citizens of New Jersey.  See Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010) (finding that the citizenship of a limited liability company is determined by the citizenship of its members).  Thus, the Court has both subject-matter and personal jurisdiction over the issues and parties in this case.

**2. Default Judgment**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a properly served defendant who fails to plead or otherwise defend an action. See Anchorage Assocs. v. Virgin Is. Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.").  While the entry of a default judgment is largely a matter of judicial discretion, the Third Circuit Court of Appeals has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1180-81 (3d Cir. 1984) (citations omitted).

Before granting default judgment, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." Signs by Tomorrow-USA, Inc. v. G.W. Engel Co., No. 05-4353, 2006 WL 2224416, at *2 (D.N.J. Aug. 1, 2006) (citing DirecTV, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2688 (3d ed.

1998). Courts are required to make an independent determination concerning damages, unless the amount of damages is certain. Jiminez v. Rosenbaum-Cunningham, Inc., No. 07-1066, 2010 WL 1303449, at *2-3 (Mar. 31, 2010); Flynn v. Mastro Masonry Contractors, 237 F. Supp. 2d 66, 69 (D.D.C. 2002). The Court should accept as true all well-pleaded factual allegations in the complaint by virtue of the defendant's default, except for allegations relating to amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Asher, 2006 WL 680533, at *1; 10A, Wright, Miller & Kane, supra, § 2688. However, the Court need not accept a plaintiff's legal conclusions. Cotapaxi Custom Design & Mfg., LLC v. Pacific Design, No. 07-4378, 2010 WL 2330086, at *3 (D.N.J. June 8, 2010) (citing Signs by Tomorrow-USA, Inc., 2006 WL 2224416, at *2); 10A Wright, Miller & Kane, supra, § 2688.

In addition, the Court must consider the following three factors when exercising its discretion to grant default judgment: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." GP Acoustics, Inc. v. Brandnamez, LLC, No. 10-539, 2010 WL 3271726, at *3 (D.N.J. Aug. 17, 2010) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987)). "In weighing these factors, [the] district court[] must remain mindful that, like dismissal with prejudice, default is a sanction of last resort." Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 867-68 (3d Cir. 1984)).

### A. Entry of Default

The Court finds that the clerk appropriately entered default on May 14, 2010. Stonebridge properly served NITA with the Complaint and Summons on October 20, 2009. (Doc. No. 12); see Fed. R. Civ. P. 4(m) (a plaintiff must serve the summons and complaint

within 120 days from filing).  Thereafter, NITA failed to respond to either the Complaint or the Amended Complaint within twenty-one days of service.  See Fed. R. Civ. P. 12(a) (defendant must respond within twenty-one days of service).  Thus, after receiving both notice of Stonebridge's claims and a fair opportunity to respond, NITA failed to submit an answer or make an otherwise appropriate response.  Accordingly, entry of default was appropriate.

### B.  Whether Stonebridge is Entitled to Default Judgment

The Court finds that Stonebridge properly states a claim for the requested default judgment against NITA pursuant to the terms of the Note and the loan documents.  First, Stonebridge is entitled to recover the principal, interest, and other amounts due on the Loan.  Stonebridge loaned NITA $1,805,000.00, and under the terms of the Note and the Loan Documents, payments on the Loan were due from February 27, 2006 until the earlier of April 27, 2009 or the sale of the Mortgaged Property.  According to the Certification of Mr. John Hosey in Support of Plaintiff's Motion for Default Judgment, NITA failed to pay principal, interest and all other amounts due on the Loan by April 27, 2009. (Certif. in Supp. of Pl.'s Request for Default J. ¶ 10).  Under the terms of the Loan, an Event of Default occurs where "[t]he Borrower . . . becomes insolvent or unable to pay its . . . debts as they mature . . . ." (Cert. in Supp. of Pl.'s Request for Default J. Ex. A, at 30).  Thus, by failing to pay all principal, interest and other amounts due on the Maturity Date, NITA defaulted on the Loan.  Therefore, Stonebridge is entitled to recover the full amount of principal plus any accrued interest.

Second, Stonebridge is entitled to foreclose upon the First Mortgage.[2]  In New Jersey, the

---

[2] The First Mortgage is not subject to the provisions of the Fair Foreclosure Act, N.J. Stat. Ann. 2A:50-62.  The Act provides that "the provisions [of the Act do not apply] to the foreclosure of a non-residential mortgage nor to collection of the obligation by means other than enforcing the lender's lien on the residential property." N.J. Stat. Ann. § 2A:50-62.  The Act defines a "residential mortgage" as a "mortgage . . . in which the security is a residential property such as a house, real property or condominium, which is occupied, or is to be occupied, by the debtor, who is a natural person, or a member of the debtor's immediate family, as that person's residence." N.J. Stat. Ann. § 2A:50-55.  According to the Mortgage and Security Agreement, the First Mortgage consists of the "lot or piece of

three elements a lender must establish to prevail in a foreclosure action are:  (1) the validity of the loan documents (the note and mortgage); (2) the alleged default in payment; and (3) the right to foreclose.  See Great Falls Bank v. Pardo, 622 A.2d 1353, 1356 (N.J. Super. Ct. Ch. Div. 1993), aff'd 642 A.2d 1037 (N.J. Super. Ct. App. Div. 1994).  Here, Stonebridge executed and recorded both the Note and the First Mortgage.  Therefore the first element is satisfied.  Moreover, as the aforementioned analysis makes clear, NITA failed to pay all principal and interest due on the Note before the Maturity Date.  Therefore, the second element is satisfied.  Finally, because NITA is a defaulting mortgagor, Stonebridge has an absolute right to foreclose.  See Chase Manhattan Mortgage Corp. v. Spina, 737 A.2d 704, 709 (N.J. Super. Ct. Ch. Div. 1998) ("Both state law and common law have established that a mortgagee maintains the absolute right to foreclose and accelerate against a defaulting mortgagor, so long as the alleged default is not attributable to the mortgagee's conduct."); see Thorpe v. Floremoore Corp., 89 A.2d 275, 276 (N.J. Super. Ct. App. Div. 1952) (finding prima facie right to foreclosure where plaintiff demonstrated execution, recordation, and nonpayment of mortgage).  Thus, the third element is satisfied.

Having determined that Stonebridge is entitled to default judgment on its claim for payment of principal, interest, and other amounts due on the Loan and foreclosure of the First Mortgage, the Court will address whether NITA is prejudiced by entry of default judgment.

### C.  Whether NITA is Prejudiced by Entry of Default Judgment

The Court finds that the Emcasco factors are satisfied.  With respect to the first Emcasco factor, the facts alleged in the Complaint, and submitted in support of this motion, provide no

---

ground situate[ed] in the City of Brigantine, County of Atlantic, State of New Jersey known and designated as 716 West Shore Drive, Lot 7, Block 7305 . . . ."  (Certif. in Supp. of Pl.'s Request for Default J. Ex. A, at 1).  There is no evidence in any of the loan documents or the pleadings that NITA uses the Mortgage Property as for any residential purpose.  Therefore, the First Mortgage is not subject to the provisions of the Fair Foreclosure Act.

indication of a meritorious defense.  "Indeed, as some courts have noted, 'the Defendant's failure to answer makes it practically impossible for the Court to 'determine whether [the defendant has] a meritorious defense . . . .'"  GP Acoustics, 2010 WL 3271726, at *4 (citing Piquante Brands Int'l, Ltd. v. Chloe Foods Co., No. 08-4248, 2009 WL 1687484, *2 (D.N.J. Jun. 16, 2009)).  Moreover, NITA's challenge to the entry of default (Doc. No. 34) based upon its claim of insufficient service of process is without merit.  One year after Stonebridge filed the Complaint, NITA moved to set aside default and opposed Stonebridge's motion for final judgment.  (Doc. No. 34).  In its brief, NITA argued that Stonebridge failed to comply with Rule 4(e) because the process server "delivered the summons and complaint upon 'Ruvhir' Patel."  (Def.'s Br. in Supp. of Mot. to Dismiss Compl. for Insufficient Service of Process, at 1).  NITA claimed that the Court should dismiss the Complaint because "[t]he recipient[']s correct name is Ruchirkumar Patel, and he was neither a resident of the property at 14 Carriage House Court, Cherry Hill, New Jersey, nor an agent of [NITA], authorized to accept service on its behalf at the time of the attempted service of process."  (Id.).

However, the record demonstrates that on October 20, 2009, Stonebridge in fact served NITA's authorized agent, Mr. Rob Nita, with the original complaint.  (Doc. No. 12).  Although it appears that the "Complaint" to which NITA refers is the Amended Complaint that Stonebridge served to "Ruvhir Patel" on April 2, 2010, the Court notes that the service effectuated on October 20, 2009 adequately satisfies Rule 4(e).  See Fed. R. Civ. P. 4(e)(2)(B), (C) (noting that a party may serve process by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there" or "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process.").  Furthermore, the allegations in the Complaint, which

was properly served on NITA in October 2009, clearly form the basis of Stonebridge's request for default judgment. Specifically, the Complaint alleges that Stonebridge loaned NITA $1,805,000.00 on January 27, 2006, and NITA failed to pay the full amount due on April 27, 2009. (Compl. ¶ 11, 14). Therefore, NITA's claimed defense fails.

With respect to the second Emcasco factor, Stonebridge has been prejudiced because NITA failed to timely respond to the Complaint and Summons or the Amended Complaint. Id. (citing Peterson v. Boyarsky Corp., No. 08-1789, 2009 WL 983123, *4 (D.N.J. Apr. 8, 2009) ("Plaintiffs will be prejudiced if no default judgment is entered, because they have no other means of vindicating their claim against [defendant]."). Finally, with respect to the third Emcasco factor, a "[d]efendant is also presumed culpable where it has failed to answer, move, or otherwise respond." Slover v. Live Universe, Inc., No. 08-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) (citing Palmer v. Slaughter, No. 99-899, 2000 WL 1010261, *2 (D. Del. July 13, 2000)).

Therefore, because all of the Emcasco factors are satisfied, default judgment is appropriate.

**D. Damages**

Although "default establishes a party's liability for the well-pleaded allegations of the complaint," it does not establish liability for the amount of damages claimed by the plaintiff. Hewitt, 2008 U.S. Dist. LEXIS 90719, at *3 (internal quotations omitted) (citing United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003)); Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). Thus, the "district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonably certainty." Credit Lyonnaise Secs., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). When conducting this inquiry, the district court has considerable latitude.

Hewitt, 2008 U.S. Dist. LEXIS 90719, at *3 (citing Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993). As the Supreme Court held in Pope v. United States, 323 U.S. 1 (1944), "[i]t is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Id. at 12.

With respect to the relief requested, Stonebridge alleges that NITA owes $2,043,827.12. This includes $1,799,905.00 in principal, $146,520.70 in interest, and $97,401.42 in late charges. In addition, Stonebridge alleges that NITA owes $31,224.49 in legal fees and costs.

The Court finds that Stonebridge is entitled to $1,799,905.00 in principal. The Note provides that Stonebridge is entitled to $1,805,000.00 in principal on the Maturity Date. NITA failed to pay Stonebridge $1,805,000.00 on or before April 27, 2009. Therefore, the Court will award Stonebridge $1,799,905.00.[3]

However, the Court cannot determine whether Stonebridge's request for attorneys' fees and costs is reasonable, or whether Stonebridge is entitled to the interest and late charges. First, with respect to Stonebridge's request for counsel fees and costs, because Stonebridge failed to attach an affidavit containing the amount of hours counsel devoted to this action and the hourly rate, the Court cannot determine whether Stonebridge's request for attorneys' fees and costs is reasonable.[4] In the Third Circuit, the burden of proving that a request for attorneys' fees is

---

[3] Because Stonebridge requests $1,799,905.00, the Court assumes that prior to filing the motion for default judgment, NITA paid Stonebridge $5,095.00.

[4] The Court notes that in the Third Circuit, "the right of a party or an attorney to recover attorney's fees from another party in a diversity action is a matter of state substantive law." Mitzel v. Westinghouse Elec. Corp., 72 F.3d 414, 417 (3d Cir. 1995) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 260 n.31 (1975)). New Jersey has expressly "adopt[ed] the 'American Rule,' which prohibits recovery of attorneys' fees by the prevailing party against the losing party." Myron Corp. v. Atl. Mut. Ins. Corp., 4 A.3d 999, 1001 (N.J. 2010). Thus, departure from the American Rule is only appropriate "where there is 'express authorization by statute, court rule or contract,'" or "when the interests of equity demand it." In re Estate of Vayda, 875 A.2d 925, 930 (N.J. 2005). Here, under the express terms of the Note, Stonebridge is entitled to recover attorneys' fees and costs. The Note provides

reasonable rests with the party seeking the fees.  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  To satisfy this burden, the petitioner must "submit evidence supporting the hours worked and rates claimed."  Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  The district court enjoys a "great deal of discretion" to adjust the awarded fee in light of the opponent's objections.  Id.  The starting point of the district court's analysis should be the lodestar amount, which is "the number of hours reasonably expended multiplied by a reasonable hourly rate."  Id. (quoting Hensley, 461 U.S. at 433).  "The Court may not make a finding of reasonableness based on a generalized sense of appropriateness, but must rely on the record."  Acosta v. Nat'l Packaging, Inc., No. 09-701, 2010 WL 3001191, at *8 (July 28, 2010) (citing Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 361 (3d Cir. 2001)).

Here, the Court cannot determine whether Stonebridge's request is reasonable because Stonebridge failed to submit any documents containing the number of hours counsel devoted to this case or the reasonable hourly rate.  Instead, Stonebridge's request consists solely of its representation that "[l]egal fees and costs associated with [NITA's] defaults . . . [equals] $31,224.49."  (Mot. for Def. J., at 5).  This information alone does not form a sufficient basis for the Court to determine the reasonableness of Stonebridge's request.  Accordingly, because Stonebridge failed to provide counsel's hourly rate and the time devoted to this action, the Court cannot determine whether Stonebridge's request for counsel fees and costs is reasonable at this time.

Second, the Court cannot determine Stonebridge's interest award because Stonebridge failed to provide adequate documentation concerning the basis for its proposed award.

---

that "[i]n the event that [Stonebridge] engages an attorney to represent it in connection with (1) any alleged default by any Obligor under any of the Loan Documents, then [NITA] shall be liable and shall reimburse [Stonebridge], on demand for all attorneys' fees, costs, and expenses incurred by [Stonebridge] . . . ."  (Promissory Note, at 4).  However, for the reasons expressed below, Stonebridge is not entitled to default judgment on the issue of attorneys' fees and costs at this time.

Stonebridge requests $146,520.70 of accrued and unpaid interest.  The Note bears interest at a floating rate per annum of one percent plus the highest prime rate published in the Money Rates Column of The Wall Street Journal.  (Cert. in Supp. of Pl.'s Mot. for Default J. Ex. A, at 1).  After an Event of Default, interest accrues "at a rate equal to five percent per annum in excess of the interest rate which is otherwise payable . . . but not more than the maximum rate allowed by law . . . ."  (Cert. in Supp. of Pl.'s Mot. for Default J. Ex. A, at 3).  Based upon this information, Stonebridge seeks a damage award in the amount of $146,520.70.  However, this information alone lacks the specificity necessary for the Court to make an accurate determination of interest.  In particular, Stonebridge fails to provide any supporting documentation concerning the precise number of days the loan accrued interest at the ordinary rate and the Default rate, as well as its precise interest calculations applying those rates.  Without this information, the Court cannot make an accurate determination of Stonebridge's interest award.

Third, the Court cannot determine NITA's late charges.  Stonebridge alleges that it is entitled to $97,201.42 in late charges.  Under the terms of the Note, in addition to principal and interest, Stonebridge is entitled to a late charge of five cents for each dollar overdue.  (Cert. in Supp. of Pl.'s Mot. for Default J. Ex. A, at 2).  However, because Stonebridge does not provide the number of days that NITA's payments are overdue, it is impossible for this Court to calculate late charges.

For the foregoing reasons, the Court will enter judgment in favor of Stonebridge in the amount of $1,799,905.00.  However, the Court will order Stonebridge to submit supporting documentation regarding its proposed counsel fees, interest, and late charges.  With respect to counsel fees and costs, Stonebridge will have fourteen days to provide documentation regarding the number of hours devoted by counsel to this litigation and the hourly rate, as well as an

itemized list of all litigation costs. With respect to the interest and late charges, Stonebridge will have fourteen days to provide supporting documentation regarding the calculation of interest. After Stonebridge provides the aforementioned documentation, the Court will issue an amended judgment as appropriate. See Acosta v. Nat'l Packaging, Inc., No. 09-701, 2010 WL 3001191, at *3 (D.N.J. July 28, 2010) (awarding plaintiff $108,588.84 in damages and $3,087.50 in attorneys' fees and costs, but postponing the award of prejudgment interest and liquidated damages because plaintiff failed to provide sufficient documentation to support its proposed interest rate).

## II.     CONCLUSION

For the reasons discussed above, Stonebridge's motion is GRANTED in part and DENIED in part, NITA's motion is DENIED. An appropriate order shall issue today.


Date:  1/31/2011                                              /s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge